**The below described is SIGNED.**

**Dated: May 08, 2007**

_/s/ William J. Thurman_
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Ronald and Janel Baird,** | Bankruptcy Number 06-22419 |
| Debtors. | Chapter 7 |
| | |
| **Robert and Paee Olah, individually and on behalf of Olena Olah, a minor**, Plaintiffs, | Adversary Proceeding No. 07-2078 |
| v. | Judge: William T. Thurman |
| **Ronald Baird; J. Kevin Bird, in his capacity as Trustee of the bankruptcy estate of Ronald Baird; and Utah Medical Insurance Association** Defendants. | |

**MEMORANDUM DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS**

The Plaintiffs commenced this Adversary Proceeding seeking declaratory relief that the

Debtor's insurance policy with the Utah Medical Insurance Association is property of the estate

and assignable notwithstanding a specific anti-assignment provision in the insurance policy contract. The Defendants filed individual Motions to Dismiss which the Court considered together, arguing that the policy is an executory contract which was not timely assumed by the chapter 7 Trustee. They also argued that even if the policy is property of the estate it is not assignable without consent from the Utah Medical Insurance Association. The Court determines that the policy is no longer property of the estate because it was an executory contract not timely assumed by the Trustee.

**I.     BACKGROUND**

For purposes of the present Motions to Dismiss, the Court assumes the following facts plead in the Plaintiffs' complaint as true.

The Debtor, Ronald Baird, is a licensed physician in the state of Utah. He held an insurance policy with Utah medical Insurance Association (the "UMIA") for 2003 requiring the UMIA to defend him against medical professional liability claims. Under the policy, the UMIA is liable for up to $1 Million in damages against the Debtor arising from a loss sustained and claimed in 2003. The UMIA is obligated not to settle any claim against the Debtor without his consent. The policy specifically restricts the Debtor's ability to assign the policy to a third party without the consent of the UMIA.

In March, 2004, the Plaintiffs filed a lawsuit against the Debtor in Utah State Court (the "State Court Action"), alleging that the Debtor caused brain damage to Olena Olah during her delivery. On July 7, 2006, the Debtor commenced the present chapter 7 bankruptcy case. He timely filed Bankruptcy Schedules which disclosed the State Court Action. On October 17, 2006, the Court entered a Discharge Order in the Debtor's case, and on October 18, 2006, the

Court granted the Plaintiffs' Motion for Relief from Stay to proceed with the State Court Action to seek recovery up to the policy limits.

On August 30, 2006, the Plaintiffs offered $20,000 to the chapter 7 Trustee to purchase an assignment of the estate's interest in the policy with the UMIA. The Trustee declined the offer because he believes the non-assignment clause in the policy is binding on the estate. On February 22, 2007, the Plaintiffs commenced the present Adversary Proceeding seeking declaratory relief that the policy is property of the estate and that it is assignable. The UMIA and the Debtor each filed the present Motions to Dismiss, arguing that the policy is not property of the estate because it was not timely assumed and even if the policy is property of the estate, the non-assignment clause is binding on the estate.

## II.   JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). Venue is appropriate pursuant to 28 U.S.C. § 1409(a).

## III.   ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), extended to this proceeding through Bankruptcy Rule 7012, the Court should grant a Motion to Dismiss if, accepting all well-pleaded facts as true and in the light most favorable to the nonmoving party, "it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1]

---

[1] Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005).

The Defendants argue that the policy is an executory contract which is no longer property of the estate since the Trustee did not timely assume it. 11 U.S.C. § 365(d)(1)[2] requires a chapter 7 trustee to assume an executory contract relating to personal property within 60 days of filing. The Debtor's case has been pending for more than 60 days and the Trustee has not assumed the policy. Accordingly, if the policy is an executory contract, it may no longer be assumed and thus may not be assigned to the Plaintiffs, thereby ending this adversary proceeding.

The Plaintiffs argue that the policy is not executory because the Debtor has paid the insurance premiums and the policy periods have expired. Thus, the definition of an executory contract is critical to this dispute.

In 1992, the District Court of Utah adopted the so-called "Countryman" definition of an executory contract, which looks to whether "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."[3] Under this definition, a contract is executory if its breach would lead to rescission.[4] In Utah, a party is entitled to rescission if the breach "defeats the very object of the contract or is of such prime importance that the contract would not have been made if default in that particular had been contemplated is a material

---

[2] All statutory references hereinafter are to the Bankruptcy Code unless stated otherwise.

[3] Thomas American Stone & Bldg., Inc. v. White, 142 B.R. 449, 452-53 (D. Utah 1992) (quoting V. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1974)).

[4] See Black's Law Dictionary 1048 (Abr. 7th ed. 2000) (defining "rescission" as "[a] party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach."); See also Williston on Contracts § 68:19 (4th ed.).

breach."[5]  Thus, under the "Countryman" definition as applied to Utah law, a contract may not be executory even if some obligations remain owing under the contract at the time of its breach.[6]

Since the District Court adopted the "Countryman" definition, however, the Tenth Circuit Court of Appeals (the "Tenth Circuit") held that "[a]n executory contract is a contract that has not as yet been fully completed or performed and in which future obligations remain."[7]  This seems consistent with the legislative history for § 365, which states that an executory contract "generally includes contracts on which performance remains due to some extent on both sides."[8]

The Tenth Circuit's definition of an executory contract appears be broader than the "Countryman" definition since the Tenth Circuit considers a contract to be executory so long as there are obligations remaining.  To the extent these definitions conflict, the Court is bound by the definition provided by the Tenth Circuit and by the most recent authority issued on the matter.[9]  If the Tenth Circuit intended something different in Myers, it is for that Court to decide.

It seems clear that all of the obligations owing under the policy have not yet been fully performed and there is more remaining than simply payment on the policy.  The Debtor is still obligated to aid UMIA in defending against the Plaintiffs in the State Court Action.  He is still

---

[5]Polyglycoat Corp. v. Holcomb, 591 P.2d 449, 451 (Utah 1979) (footnotes omitted).

[6]See White, 142 B.R. at 452 (reasoning that the Countryman definition is useful "[b]ecause only the rare agreement is without any unperformed obligation on either side. . .").

[7]In re Myers, 362 F.3d 667, 673 (10th Cir. 2004) (quoting Black's Law Dictionary 365 (6th ed. 1991)).

[8]House Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977).

[9]See U.S. v. Spedalieri, 910 F.2d 707, 709 n.2 (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits.").

obligated to consult with UMIA in assessing the status of the litigation and in deciding whether to settle. For its part, UMIA is still obligated to defend the Debtor against the State Court Action. These obligations represent more than a simple obligation for payment. Accordingly, the Court determines that even considering the facts in a light most favorable to the Plaintiffs, the policy was executory (as defined in Myers) at the time the Debtor filed for bankruptcy relief. The Trustee did not assume the policy, so it is no longer property of the estate.

**IV.   CONCLUSION**

      The Defendants' Motion to Dismiss should be GRANTED.

_____End of Document_____



Service of the foregoing **MEMORANUM DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS** will be effected through the Bankruptcy Noticing Center to each party listed below.

David Olsen
Dewsnup King & Olsen
2020 Beneficial Life Tower
36 South State Street
Salt Lake City, UT 84111

Joel Marker
Jamie Nopper
McKay Burton & Thurman
170 South Main Street, Suite 800
Salt Lake City, UT 84101

Adam Affleck
Prince, Yeates & Geldzahler
City Center I, Suite 900
175 East 400 South
Salt Lake City, UT 84111

Michael Johnson
Snell & Wilmer
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, UT 84101-1004

George Hunt
Williams & Hunt
257 East 200 South, Suite 500
P.O. Box 45678
Salt Lake City, UT 84145-5678